IN THE UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF FLORIDA
(Gainesville Division)

KRISTOPHER LEE MADSON,                          Case No.: _____

       Plaintiff,

v.

THE CITY OF GAINESVILLE, FLORIDA,
a municipal corporation, and
OFFICER JEFFREY KERKAU, in his individual capacity,

       Defendants.
_____/

### COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

The Plaintiff, KRISTOPHER LEE MADSON, (hereinafter "Plaintiff" or "MADSON") by and through his undersigned attorneys, sues the Defendants, CITY OF GAINESVILLE, FLORIDA acting through its delegated agent, the Gainesville Chief of Police, (hereinafter "CITY OF GAINESVILLE") and Gainesville Police Officer JEFFREY KERKAU (hereinafter "OFFICER KERKAU"), and states:

### CAUSE OF ACTION

1. This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, the IV and XIV Amendments to the United States Constitution, Florida Statute § 768.28, and the State of Florida Constitution, Article I, §§ 2, 9 and 12.

1

## JURISDICTION AND VENUE

2. This court has federal question jurisdiction of this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of the pendant state claims pursuant to 28 U.S.C. § 1367.

3. This is an action for damages in excess of $75,000, exclusive of interests, costs and attorney's fees.

4. All actions took place within the Northern District of Florida and venue is proper within the Northern District of Florida

## PARTIES

5. At all times material MADSON was a resident of Alachua County, State of Florida, and the United States of America, including on December 19, 2012.

6. At all times referenced herein, Defendant OFFICER KERKAU was and continues to be employed by the City of Gainesville Police Department.

7. At all times material, the CITY OF GAINESVILLE was a municipal corporation under the laws of the State of Florida and the United States of America.

8. At the time of the incident complained herein, TONY JONES was the Chief of Police for the CITY OF GAINESVILLE. As such, he was responsible for making policy for the department and ensuring that the officers under his command, including OFFICER KERKAU, conducted themselves properly and received appropriate training, supervision, and discipline.

9.   At the time of the incident complained herein, the CITY OF GAINESVILLE had the responsibility and obligation to investigate all incidents relating to officers' conduct and discipline, including that of OFFICER KERKAU.

10.   At the time of the incident complained herein, the CITY OF GAINESVILLE was responsible for handling complaints relating to the conduct of police officers.

11.   MADSON sues the CITY OF GAINESVILLE, acting through the Gainesville Chief of Police, in his official capacity.

12.   MADSON sues OFFICER KERKAU in his individual capacity.

13.   At all times referred to herein, the Defendants were acting under the color of the law, statute, ordinance, regulations, policies, customs, and usages of the United States of America, State of Florida, and the City of Gainesville, Florida.

## GENERAL ALLEGATIONS

14.   On or about December 19, 2012, at approximately 1:20 A.M., Plaintiff MADSON was leaving the 101 Downtown Bar with two friends. They had been celebrating the birthday of one of the friends. MADSON was dressed in jeans and not wearing a shirt. After leaving the bar MADSON was contacted by a Gainesville Police Department (GPD) Officer who instructed MADSON to leave the area. MADSON went to the parking garage across the street from the bar where his vehicle was parked, got into the back seat of his vehicle with one of his friends driving, and proceeded to the exit from the parking garage which is controlled by a traffic control arm.  MADSON and his

friends attempted to activate the traffic control arm by payment but were unsuccessful in doing so. MASON then got into the drivers seat of his vehicle and tried to follow another vehicle through the exit before the traffic control arm could come down. However the traffic control arm came down on MADSON's vehicle and broke. MADSON then drove his vehicle through the broken traffic control arm and was pursued thereafter at a high rate of speed by at least two GPD officers, including Officer M. P. Bekkevolt and Officer D. M. Hayes-Morrison. After a brief chase by GPD officers, MADSON ultimately crashed his vehicle in the vicinity of Northeast 6th Avenue and Northeast 3rd Street, Gainesville, Florida. MADSON then exited his vehicle and ran to a location behind a building located at 317 Northeast 1st Street, Gainesville, Florida, and laid face down on the ground. At all times relevant hereto MADSON was highly intoxicated, dressed only in shoes and jeans and was unarmed.

15. In his Incident/Investigation Report dated 12/19/2012 Officer Bekkevold stated: "While making contact with Madson, I could smell the distinct odor of alcohol emanating from his person and instructed him to not drive." He further stated: "Tison (one of the occupants of the vehicle) stated Madson had been drinking all night because they were celebrating his 40th birthday." (Emphasis added) And, after MADSON was apprehended by Officer Kerkau's canine, he stated: "I could smell the distinct odor of alcohol emanating from his person while being transported to SHANDS (ACFR #40 Transported)." and "Madson had slurred speech when I spoke with him and was making erratic statements [redacted]".

4

16. Numerous GPD officers responded to the scene where MADSON'S vehicle had crashed and established a perimeter sufficient to prevent his escape, particularly considering the fact that he was on foot.

17. At approximately 1:27 a.m. OFFICER KERKAU arrived on scene with his police canine, Roo, where he met with Officer Castro who provided a physical description of MADSON.

18. OFFICER KERKAU pursued MADSON with Roo on a leash. OFFICER KERKAU knew his dog Roo is trained to track a person and bite the person he finds.

19. OFFICER KERKAU knew or should have known that MADSON was highly intoxicated and could not have resisted OFFICER KERKAU or any of the GPD officers present at the scene.

20. At no time did OFFICER KERKAU announce his presence, or the presence of his police canine Roo, nor did he issue a warning that would have provided MADSON, who was laying face down on the ground, with an opportunity to surrender.

21. The canine, Roo, was trained to apprehend suspects by biting them and then holding on to the suspect, continuously reestablishing the bite until the canine is removed from the suspect by its police handler.

22. Pursuant to this training, when the canine Roo apprehended MADSON, the canine bit him first on his head and then continuously reestablished his bite over a considerable period of time on MADSON's arm until removed by OFFICER KERKAU.

5

23. OFFICER KERKAU would not release the dog until MADSON showed his hands, which was almost impossible given the circumstances of the attack.

24. As a result of OFFICER KERKAU actions, MADSON sustained horrific permanent injuries to his right arm.

25. At the time of this incident and to date, the CITY OF GAINESVILLE did not have in place a reasonable policy which governs the use of police canines within the department.

26. At the time of this incident and to date, the CITY OF GAINESVILLE does not have an adequate system of review of its records of use of force, and more particularly, the use of canine force by its officers.

27. At the time of this incident and to date, the CITY OF GAINESVILLE has failed to install an adequate internal affairs review process within the Gainesville Police Department.

28. At the time of this incident and to date, the CITY OF GAINESVILLE has failed to acknowledge and adequately protect against the potential for serious and permanent injuries caused by use of force from its canine unit.

29. The use of force against MADSON was wholly unnecessary; it did not accomplish any legitimate law enforcement purpose under the circumstances presented to OFFICER KERKAU.

30. The illegal use of canine force against MADSON was foreseeable given the gap in the canine training and policy established by the CITY OF GAINESVILLE,

which was or should have been known to it based on prior instances of canine bite apprehensions of other persons who have been highly intoxicated.

31. To date, the CITY OF GAINESVILLE has failed to promulgate and maintain adequate policies regarding the use of force and, more specifically, the use of force by police canines.

## COUNT I
## VIOLATION OF CIVIL RIGHTS AS TO OFFICER KERKAU
## BASED ON EXCESSIVE USE OF FORCE

32. MADSON incorporates paragraphs 1 through 31 above as if fully set forth herein.

33. The degree of force utilized by OFFICER KERKAU in order to accomplish the apprehension and seizure of MADSON'S person was unreasonable under the Fourth Amendment of the United States Constitution.

34. The unlawful physical attack on, MADSON, committed by OFFICER KERKAU was effected under the color of law and his authority as a police officer for the City of Gainesville.

35. The acts of OFFICER KERKAU as set forth herein were unlawful, willful and wanton.

36. As a direct and proximate result of the illegal actions of OFFICER KERKAU, MADSON suffered grievous bodily harm and was deprived of his right to be secure in his person against the use of excessive force, in violation of his rights protected by the Fourth Amendment to the United States Constitution.

37.     As a direct and proximate result of the excessive use of force by OFFICER KERKAU, MADSON suffered grievous bodily harm, including permanent injuries to his body as well as psychological damages, pain and suffering, and medical expenses, then and into the future.

WHEREFORE, the Plaintiff, KRISTOPHER LEE MADSON respectfully requests a jury trial and judgment against OFFICER KERKAU for compensatory damages, punitive damages, costs of suit, including the Plaintiff's reasonable attorneys' fees pursuant to Title 42 U.S.C § 1988, and such other relief as the Court deems proper.

## COUNT II
## VIOLATION OF CIVIL RIGHTS AS TO THE CITY OF GAINESVILLE

38.     By reference, MADSON incorporates each and every paragraph 1 to 31 and paragraphs 33, 34, and 35, as if fully set forth herein.

39.     The CITY OF GAINESVILLE is vested by state law with the authority to make policy for the City, including policies for the police force regarding how to properly affect an arrest and circumscribing the lawful use of force in doing so. The CITY OF GAINESVILLE has delegated that authorization to the Chief of Police, Tony Jones.

40.     The CITY OF GAINESVILLE Police Department has a history of widespread abuse and excessive use of force and the CITY OF GAINESVILLE has been deliberately indifferent to this conduct.

41. At the time of this incident the CITY OF GAINESVILLE had a policy authorizing the use of force by means of a trained attack dog without requiring the police officer to verify that a crime had been committed.

42. The CITY OF GAINESVILLE and the Chief of Police were aware of this pattern of abuse, and excessive force by its police officers, having received numerous reports of officer misconduct, and knew or should have known that the City's policies regarding the training and discipline of officers accused of excessive force, including misuse of police canines, were so inadequate that it was obvious that a failure to correct them would result in further incidents of illegal conduct by police officers.

43. Despite this knowledge, the CITY OF GAINESVILLE and the Chief of Police failed to take any corrective action.

44. The CITY OF GAINESVILLE and Chief of Police failed to properly train and supervise OFFICER KERKAU such that he would not use his police canine to bite highly intoxicated individuals.

45. At all times relevant to this Complaint, the Gainesville Chief of Police was acting pursuant to his delegated authority of the CITY OF GAINESVILLE and pursuant to the official policy, practice, and custom of the CITY OF GAINESVILLE and the Gainesville Police Department.

46. At all times relevant to this Complaint, the CITY OF GAINESVILLE intentionally, knowingly or recklessly failed to instruct, supervise, control, and discipline his police officers in order to prevent them from using unreasonable and excessive force

during an arrest, which caused or contributed to the violation of MADSON'S rights as protected by the Fourth Amendment to the United States Constitution.

47. Defendant CITY OF GAINESVILLE and the Chief of Police had knowledge of, or, had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge of the deficiencies within the department that caused and contributed to the acts complained of herein.

48. Defendant CITY OF GAINESVILLE and the Chief of Police had the power to prevent the commission of wrongs set forth herein, including excessive use of force and could have done so by reasonable diligence, but they intentionally, knowingly, and recklessly failed to do so.

49. Defendant CITY OF GAINESVILLE and the Chief of Police, acting under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of OFFICER KERKAU.

50. As a direct and proximate cause of the acts and omissions stated herein, MADSON suffered grievous bodily harm, including permanent injuries to his body as well as psychological damages, pain and suffering, and medical expenses, then and into the future.

51. WHEREFORE, the Plaintiff, KRISTOPHER LEE MADSON respectfully requests a jury trial and judgment against the CITY OF GAINESVILLE for compensatory damages, costs of suit, including the Plaintiff's reasonable attorneys' fees pursuant to Title 42 U.S.C.§1988, and such other relief as the Court deems proper.

## COUNT III
## BATTERY AS TO CITY OF GAINESVILLE

52. The Plaintiff incorporates paragraphs 1 through 31 above as if fully set forth herein.

53. This claim is brought pursuant to Florida Statute § 768.28.

54. All conditions precedent to this action, including pre-suit notification to the Defendants, has occurred or has been performed. A copy of the Notice of Claim sent pursuant to Fla. Sec. § 768.28(6)(a) is attached hereto as Exhibit A.

55. At the time of the event giving rise to this action, OFFICER KERKAU was an employee of the Defendant, CITY OF GAINESVILLE, and was acting in the course and scope of his employment by affecting a police seizure of a citizen.

56. During MADISON'S apprehension, OFFICER KERKAU committed a battery upon MADISON by commanding his trained police canine to attack MADISON, resulting in an excessive use of force that was not reasonable under the circumstances presented.

57. OFFICER KERKAU was not in any real or immediate danger of being subjected to any physical force by the Plaintiff who was highly intoxicated after an evening of consuming alcohol.

58. As a direct and proximate result of the conduct of OFFICER KERKAU, MADSON suffered grievous bodily harm, including permanent injuries to his body as well as psychological damages, pain and suffering, and medical expenses, then and into the future.

11

WHEREFORE, the Plaintiff KRISTOPHER LEE MADSON respectfully requests a jury trial and judgment against the CITY OF GAINESVILLE for compensatory damages, costs of suit, including the Plaintiff's reasonable attorneys' fees pursuant to Title 42 U.S.C. § 1988, and such other relief as the Court deems proper.

DATED this _____8th_____ day of April 2015.

CLAYTON-JOHNSTON, P.A.

_____
LEONARD E. IRELAND, JR.
Florida Bar No. 104630
18 NW 33rd Court
Gainesville, FL  32607
Telephone: 352-376-4694
Facsimile: 352-371-7366
Primary Email: LIreland@Clayton-Johnston.com
Secondary Email: TBrehm@Clayton-Johnston.com
Attorney for Plaintiff